UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

COLLIN BAMKE,

          Plaintiff,

   v.                                          Case No. 17-CV-1131

J.B. HUNT TRANSPORT, INC.,

          Defendant.

## ORDER ON DEFENDANT'S NINTH MOTION IN LIMINE

Before the court is defendant J.B. Hunt's motion in limine wherein it asks "[t]hat during direct examination of any treating physician, the plaintiff be barred from utilizing any medical records other than those reviewed and relied upon by the physician in his care and treatment of the patient, or those which plaintiff has previously disclosed were reviewed by the physician." (ECF No. 57 at 4.)

In a follow-up brief, J.B. Hunt points to the testimony of Dr. William Pennington, who surgically repaired a tear in Collin Bamke's shoulder on August 11, 2015. In December of 2015 Dr. Pennington prepared a report regarding Bamke's worker's compensation claim and opined that the tear he surgically repaired was related to the July 24, 2014 injury. (ECF No. 85 at 2-3.) This conclusion was seemingly inconsistent

with the testimony of Dr. Paul Miller, who performed surgery on Bamke's shoulder about a year before and testified that, at that time, there was no tear like the one that Dr. Pennington subsequently repaired. (ECF No. 85 at 3.)

On January 28, 2020, the day before his deposition was to be taken, Dr. Pennington reviewed an MRI taken before the surgery performed by Dr. Miller. At his deposition, Dr. Pennington testified that this MRI, contrary to Dr. Miller's testimony, did show the tear that he repaired in August of 2015. Bamke paid Dr. Pennington $1,000 in part for this review.

J.B. Hunt argues that Dr. Pennington cannot testify to his opinion regarding the 2014 MRI because he did not review it in conjunction with his treatment of Bamke. It argues that his opinion was that of a retained expert, and Bamke failed to comply with Fed. R. Civ. P. 26(a)(2)(B) regarding its obligation to produce information related to retained experts about Dr. Pennington.

Bamke asks the court to deny J.B. Hunt's motion because "[f]airness dictates that the plaintiff's treating physicians should be permitted to review records the defendant may use to cross-examine them at trial." (ECF No. 87 at 1.) The court agrees with Bamke on this point. In fact, the court has no reason to believe J.B. Hunt disagrees with this point. A witness can certainly review records with which he might be confronted on cross-examination. If Dr. Pennington is asked on cross-examination about the 2014 MRI, he can testify as to his interpretation.

2

However, this is not that nature of J.B. Hunt's motion. J.B. Hunt seeks to bar Dr. Pennington from testifying on direct examination that he concluded that the tear was caused by the July 24, 2014 injury because the tear was present on the 2014 MRI. As to the issue of causation, on direct examination Dr. Pennington is limited to explaining why, when he wrote his report in December of 2015, he concluded that the tear he repaired in August of 2015 was a result of the incident on July 24, 2014. Because Dr. Pennington formed this opinion without reviewing the 2014 MRI, he cannot offer the MRI as a basis for his opinion.

Dr. Pennington's subsequent review and interpretation of the MRI is classic expert testimony. Because the opinion was not formed in conjunction with his treatment of Bamke, but rather was formed when he was hired to evaluate this evidence, Rule 26(a)(2)(B) required that he provide a written report setting forth his opinions and the bases therefor. He did not. It was not until the eve of trial that, for the first time, he offered an opinion on the 2014 MRI. The proper disclosure of expert witnesses is not a pointless formality. It allows the opposing party to prepare for trial. *Karum Holdings LLC v. Lowe's Cos.*, 895 F.3d 944, 952 (7th Cir. 2018) (quoting *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 757 (7th Cir. 2004)).

The Court of Appeals for the Seventh Circuit has stated that "the sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless." *David v. Caterpillar, Inc.*, 324 F.3d

851, 857 (7th Cir. 2003) (quoting *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998)); Fed. R. Civ. P. 37(c)(1). The court cannot find Bamke's violation was justified, and J.B. Hunt readily establishes prejudice. The fact that Dr. Miller did not observe a tear in 2014 is "an important tenet of the defendant's causation defense on this issue." (ECF No. 85 at 5.) It explains, "Had this information been timely disclosed, defendant would have had the opportunity to have the MRI reviewed by another radiologist to determine whose interpretation was correct." (ECF No. 85 at 5.) J.B. Hunt learned of this new opinion less than three weeks before trial, leaving insufficient time to cure this prejudice.

Bamke having failed to comply with Rule 26(a)(2)(B) regarding Dr. Pennington's opinion on the 2014 MRI, Dr. Pennington is precluded from offering his opinion about the MRI on direct examination. Of course, should J.B. Hunt open the door on cross-examination by asking Dr. Pennington questions about the 2014 MRI, Dr. Pennington will be allowed to offer his opinion about what it showed.

The same goes for any other treating physicians who Bamke intends to call as witnesses at trial. Unless they have complied with Rule 26(a)(2)(B), they will be limited to testifying about those medical records that they reviewed and relied upon in their care and treatment of Bamke.

Consequently, J.B. Hunt's ninth motion in limine is granted.

**SO ORDERED.**

Dated at Milwaukee, Wisconsin this 12th day of February, 2020.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge